330 So.2d 205 (1976)
FIRST GULF BEACH BANK AND TRUST COMPANY, As Executor of the Last Will and Testament of Bertha Ellen Weller, Deceased, Appellant,
v.
Leo GRUBAUGH, an Individual, Appellee.
No. 74-394.
District Court of Appeal of Florida, Second District.
April 9, 1976.
*206 John T. Allen, Jr., St. Petersburg, and James E. Elliott, St. Petersburg Beach, for appellant.
Philip W. Dann of Baird & Dann; and Belcher & Fleece, St. Petersburg, for appellee.
PER CURIAM.
This is an appeal from a summary judgment enforcing a contract to make a will. The pertinent facts are fairly set forth in the final judgment as follows:
"Based upon the affidavits, interrogatories, and other material properly before this court, the uncontroverted facts are found to be as follows: Bertha Ellen Weller died testate, a resident of Pinellas County, Florida, on June 3, 1971. Defendant, First Gulf Beach Bank and Trust Company, is the duly appointed and acting executor of Bertha Weller's last will which leaves Plaintiff herein an amount equal to 7% of the residuary estate.
"During July of 1964, Plaintiff received a letter in the handwriting of Bertha Weller and bearing her signature, informing him that
... what money I have I shall spend to be taken care of. [W]hoever [sic] will take care of me will get all that I have... . If you would be willing to give me a room and let your home be mine, I would be willing to pay you well and to give you all that I have left at the end... .
Whoever takes care of me would get all that I have except that I have to make out a will to give something to the church and [to pay] my funeral expenses.
Shortly after his receipt of the above quoted letter, Plaintiff departed from his home in Rochester, N.Y., and returned several days later with Bertha Weller who thereupon began living with Plaintiff in a room of her own specially modified at Plaintiff's expense to accommodate her.
"The decedent resided with Plaintiff, his wife, and children for approximately one year before departing with the understanding that she could return at any time she desired. Her departure was occasioned by the fact that her health, which had been poor upon her arrival in Rochester a year earlier, had improved considerably during her residency with Plaintiff and she therefore was no longer dependent upon others for care and provisions. Plaintiff assisted her in locating other housing in which she remained for approximately eight months or until March of 1966 when she moved to St. Petersburg where she remained until her death.
"On October 27, 1964, Bertha Weller executed in Rochester a last will and testament which provided:
FIFTH: Of my net estate ... I give, devise and bequeath ...
a) Eighty percent (80%) to my nephew, Leo Grubaugh... to have and to hold the same absolutely and forever provided my said nephew shall care and provide for me in a proper and fitting manner in his home from the time that I determine that I need such care because of failing health until my death. (emphasis added)
The will further left 15% to Highland Park Baptist Church and 5% to Detroit Bible College.

*207 "It is undisputed that the will of October 27, 1964 is in writing, bears the signatures of two subscribing witnesses, and was signed by Bertha Weller.
* * * * * *
"This court is of the opinion that there exists no genuine issue as to any material fact relative to the allegations contained in the pleadings herein; that the will of October 27, 1964, is a memorandum sufficient to satisfy the requirements of Florida Statute § 731.051; that the contract entered into by Bertha Weller and Plaintiff was valid under the law of New York and that it is, so far as it is reflected in the will of October 27, 1964, enforceable in the courts of this state; and that Plaintiff is entitled to a summary judgment as a matter of law."
The will of October 27, 1964, referred to by the court, was subsequently revoked, and Mrs. Weller died leaving a will in which the plaintiff-appellee was named the beneficiary of 7% of the net estate.
Appellant contends that the judgment must be reversed because it affirmatively appears that the alleged contract to make a will was not executed in conformity with the requirements of Fla. Stat. § 731.051 (1971), which reads as follows:
"731.051 Agreements to make a will, requirements. 
(1) No agreement to make a will of real or personal property or to give a legacy or make a devise shall be binding or enforceable unless such agreement is in writing signed in the presence of two subscribing witnesses by the person whose executor or administrator is sought to be charged.
(2) This section shall apply to agreements made on, after or prior to January 1, 1958."
Obviously, there was no compliance with the specific requirements of the statute. Even if Mrs. Weller's letter to appellee could be considered an agreement, it fell short of the requirements of the statute because it was not signed in the presence of two subscribing witnesses. The issue turns on whether, as in the case of the statute of frauds, there are circumstances short of literal compliance which could be said to satisfy the statute.
The Florida courts have discussed this statute on several prior occasions, though sometimes by way of dicta. Where several defenses had been raised to a suit for enforcement of an oral contract to make a mutual will in Hagan v. Laragione, Fla. App.2d, 1964, 170 So.2d 69, this court stated:
"Defenses # 3 and # 5 contend that, since this estate consists of a large amount of real property, the enforcing of this alleged oral agreement would be violative of Fla. Stat., Secs. 689.01 and 725.01, F.S.A., which require conveyances or contracts to convey realty to be in writing. The appellees contend that the appellant is estopped from raising the statute of frauds because the appellant's decedent accepted the full benefits of her first husband's will, i.e., the alleged oral agreement has already been partly performed. 37 C.J.S. Frauds, Statute of § 100, provides:
`* * * Also it is immaterial whether or not an agreement to make a joint will or mutual or reciprocal wills is evidenced by a writing sufficient to give it validity under the statute of frauds where the survivor elects to, and does, accept the full benefits accruing to him under the joint will or the will of the other party.'
See also 169 A.L.R. 9 and Keith v. Culp, supra [Fla.App., Ill So.2d 278]. Thus it was not error to strike these defenses.
"Defense # 4 states that if, as was pleaded in the alternative, the alleged contract was not entered into until 1958, then Fla. Stat., Sec. 731.051, F.S.A., quoted above, is applicable. This contention cannot be sustained. The doctrines of *208 part performance and estoppel enunciated in the last paragraph except this contract from the provisions of Fla. Stat., Sec. 731.051, F.S.A., as well as the other statutes of frauds. Keith v. Culp, supra."
In Fletcher v. Williams, Fla.App.1st, 1963, 153 So.2d 759, the court held that a defense predicated upon the failure to comply with Fla. Stat. § 731.051 was an affirmative defense which could not be raised by a motion to dismiss the complaint. In dissenting, Judge Sturgis said:
"As I understand the case, the Statute of Frauds has nothing to do with the issue, and the problem of the plaintiffs, which in my opinion they failed to solve, was to allege sufficient facts to state a cause of action upon which relief could be granted, notwithstanding the provisions of F.S. § 731.051, F.S.A.
* * * * * *
"F.S. Section 731.051, F.S.A., both invalidates a contract of the type sued on and absolutely bars its enforcement. It establishes a substantive public policy and for that reason is not personal to the party affected in any given case... ."
The Third District Court of Appeal seems to agree with Judge Sturgis' view of the statute. In Talmudical Academy of Baltimore v. Harris, Fla.App.3d, 1970, 238 So.2d 161, the court denied a petition for certiorari seeking review of the dismissal of a complaint attempting to enforce a written promise to make a bequest where the trial judge had relied upon the provisions of Fla. Stat. § 731.051. As in the instant case, the promise had been made in another jurisdiction, so the court first addressed itself to this issue by stating:
"Appellant urges that the section is not applicable because the copy of the cause of action attached to the complaint shows that the written promise was made in the State of Maryland. This argument is founded upon the principle that the validity of a contract will ordinarily be determined under the law of the place where it is made. See Castorri v. Milbrand, Fla.App. 1960, 118 So.2d 563. Section 731.051 is a part of the Florida probate law. It does not deal with the validity of an agreement but with the enforceability of the agreement in the courts of this state. As such it is a part of the public policy of the state dealing with the kind of claim against an estate that will be allowed or enforced by the courts of the state. It is therefore procedural in nature and is applicable to all actions such as the present one brought in this state. Cf. Fincher Motors, Inc. v. Northwestern Bank & Trust Co., Fla. App. 1964, 166 So.2d 717."
On the question of unenforceability in the face of the statute, the court said:
"Appellant's second point urges a departure from the essential requirements of law in that the claimed premature action of the trial judge deprived the plaintiff of an opportunity to show either through a further pleading or at trial that § 731.051, Fla. Stat., F.S.A., is inapplicable by showing circumstances which would create an issue as to an exception to the statute. Appellant equates the provisions of the statute to various sections of the Statute of Frauds, § 725.01, Fla. Stat., F.S.A., (Cf. Fletcher v. Williams, Fla.App. 1963, 153 So.2d 759, 761) where exceptions to the unenforceability of certain oral promises have been engrafted upon the statute by judicial opinions. See cases cited at 15 Fla. Jur.Frauds, Statute of § 14.
"Appellant does not cite a recognized exception to the applicability of § 731.051. Our research reveals only one possible exception. See Hagan v. Laragione, Fla.App. 1964, 170 So.2d 69, 71. Under this circumstance we cannot hold that trial judge departed from the essential requirements of law by failing to begin a process of judicial attrition."
*209 See also City of Hope v. Levin, Fla.App. 3d, 1972, 266 So.2d 59.
The most recent analysis of the statute is found in Donner v. Donner, Fla.App.3d, 1974, 302 So.2d 452, in which the majority of the court held that a written but unwitnessed separation agreement in which a husband agreed to make a will containing certain devises and bequests to his wife and child was held to be enforceable in spite of the statute. Significantly, however, the basis for this decision was that since the agreement had been ratified and approved in an Alabama divorce judgment and later upheld by a New York court in a suit attacking its validity, these adjudications were res judicata and entitled to full faith and credit so as to preclude those claiming under the husband's new will from contending that the contract to make a will was unenforceable under the statute. On this point, the court said:
"We also do not think that under the circumstances of this case, Fla. Stat. § 731.051, F.S.A. serves as a bar to the enforceability of the contract because of the absence of two subscribing witnesses. Appellants rely heavily on Talmudical Academy of Baltimore v. Harris, Fla. App. 1970, 238 So.2d 161. That case stands for the proposition that in an action to enforce a contract to give a legacy or make a devise, the contract will be unenforceable unless such agreement is in writing signed in the presence of two subscribing witnesses. This court held that Section 731.051 is part of the Florida probate law and the public policy of this state relating to the enforceability of claims against an estate.
"The crucial distinction between the Talmudical Academy case and the instant case is that in the former case the promisee was suing for the first time in a Florida court to enforce a contract which was valid only in a sister jurisdiction. There had been no prior judicial proceedings in that case such as there have been in the cause sub judice."
Judge Carroll dissented because he felt that the Alabama and New York proceedings were not res judicata since the circumstances that gave rise to the defense did not occur until the husband died without having made a will in accordance with his agreement. He carefully analyzed the distinction between Fla. Stat. § 731.051 and the Statute of Frauds as follows:
"Oddly, because he was not called upon for any performance, Edward Donner in his brief made the argument that the judgment should be affirmed on the ground that the Florida statute against enforceability was abrogated by partial performance. What performance, or by whom, was not stated. The brief of the appellee Beatrice Donner did not advance that contention. However, part performance would not operate to vitiate this statute which bars enforcement, although we are aware of a statement to the contrary in an opinion by the second district court of appeal, as a dictum since that case did not concern § 731.051 because the agreement involved there was made prior to the time the statute became effective. See Hagan v. Laragione, Fla.App. 1964, 170 So.2d 69.
"Prior to the enactment of § 731.051 Fla. Stat., F.S.A. requiring such agreements to be in writing with subscribing witnesses in order to be enforceable in Florida, agreements of that nature which were oral or in writing (without subscribing witnesses) were enforceable. As to those earlier cases, where an agreement to make a will involved a devise of real estate, it was necessary for such agreement to be in writing signed by the party to be charged in order to satisfy the statute of frauds. When such an agreement to devise real property was oral, but was performed or partly performed by the promisee, it was held that the performance could take the oral agreement out of the statute of frauds, as in the case of an agreement for a conveyance. Then, even without subscribing *210 witnesses, there was no provision of law against its enforcement.
"The present statute is in a different category. It is a part of the Florida Probate Law, and, as in the case of wills where the statutory requirements for a valid will must be met in order for it to be admitted to probate, the statute in question prescribes requirements which are necessary for an agreement to make a will, in order for such an agreement to be valid and enforceable in Florida. To hold that part performance by the promisee of an otherwise unenforceable agreement to make a will would make it enforceable against the executors of the promisor would defeat the purpose and intent of the legislation. This is so because in most instances where a person enters into an agreement with another to make a will containing devises or bequests to the latter, it is done in return for some consideration supplied by, or undertaking on the part of the other person, such as to care for the promisor, and in most such instances there is performance, or some performance by the promisee. But it was for the purpose of precluding the enforceability of agreements of that kind, unless they were in writing and with subscribing witnesses, that § 731.051 was enacted."
Ohio, which is one of the few states other than Florida with a special statute on contracts to make a will, construes its statute in the same manner as our Third District Court of Appeal views Fla. Stat. § 731.051. Originally, Ohio only had a general statute of frauds (GC § 8621). Then, in 1935 the legislature enacted GC § 10504-3 which dictates that an agreement to make a will must be in writing but does not require it to be witnessed. Referring to the new statute in Sherman v. Johnson, 1953, 159 Ohio St. 209, 112 N.E.2d 326, the Ohio Supreme Court said:
"That section requires that, in order to be valid and effective, a will must comply with certain definite formalities. The reason for such formalities is to prevent the diversion of a decedent's estate from those who would take it under the statutes of descent and distribution except in instances where the decedent has clearly and deliberately expressed an intention to so divert it. If, by contract, the decedent can accomplish the same result, there would be a risk of so diverting his estate, not only without complying with those formalities but also perhaps without even any written agreement. Section 10504-3a was obviously designed to guard against this and to avoid the risk that future court constructions of Section 8621 would not sufficiently accomplish that purpose."
Upon reflection, we are persuaded that Fla. Stat. § 731.051 is not a typical statute of frauds. The statute of frauds already applied to contracts to make devises of realty. By the passage of a separate statute containing different wording, we believe the legislature had more in mind than simply extending the statute of frauds to contracts for bequests of personalty. Fla. Stat. § 731.051 is specifically intended to require that one who contracts to make a will should do so with substantially the same formalities as when he executes his will. To permit part performance or an unwitnessed writing to obviate the statute would be to thwart its obvious purpose. We hereby recede from anything to the contrary which appears in Hagan v. Laragione, supra.
While Mrs. Weller's will of October 27, 1964, was witnessed, it did not constitute an agreement to make a will which would be enforceable in the face of the statute. See Wilson v. Dunkle, 1955 Ohio Com.Pl. 1955, 132 N.E.2d 483.
Since our opinion is dispositive of the case, the appellant's other points will not be discussed. The summary judgment is reversed, and the case is remanded for further *211 proceedings consistent with this opinion.
McNULTY, C.J., and HOBSON and GRIMES, JJ., concur.