399 So.2d 462 (1981)
Daniel SILIANOFF and Michael Silianoff, Appellants,
v.
George SILIANOFF, Individually and As Personal Representative of the Estate of Helen T. Silianoff, Appellee.
No. 80-221.
District Court of Appeal of Florida, Second District.
June 3, 1981.
*463 Waldense D. Malouf, Clearwater, for appellants.
John R. Fricker of Boyer & Fricker, Clearwater, for appellee.
OTT, Judge.
Helen Silianoff died in 1977, a resident of Florida. Her last will, executed in 1975, appointed her son George executor of her estate and bequeathed her home in Largo to him. She also left him 60% of the residue of her estate. Her sons Daniel and Michael were also named as residuary beneficiaries, Daniel to receive 30% and Michael 10%. A fourth son, James, was excluded from the will because his mother had provided for him during her lifetime, and he is not a party to this litigation.
After the will was admitted to probate George filed an inventory showing that the only assets of the estate consisted of the home and approximately $3,500 in personal property. Daniel and Michael responded with pleadings by which they sought (1) to enforce an oral agreement by Helen to leave her estate to George and Daniel in equal shares, and (2) an order by the probate court that George include in the estate some $106,000 which Helen had deposited in various bank accounts to which George's name was added at least as a cosignatory.
It appears that the Silianoff family had lived in Illinois for a number of years. When Mr. Silianoff died intestate in 1942, the principal asset in his estate was the family home in Bensenville. Under the Illinois law of intestate succession, his estate devolved to his widow (40%) and four sons (60%). In 1955 Michael filed suit to obtain his share of his father's estate, and Helen settled with him for $12,000. At about the same time (1955 or 1956) she allegedly entered into an oral agreement with George and Daniel that she would will her estate to them in equal shares if they would forgo all effort to obtain their shares of their father's estate. They promised to do so and, in fact, later quitclaimed their interest in the family home to Helen. James retained his interest in the home, but never made any demands upon his mother. She made a will in Illinois leaving half her estate to George and half to Daniel. Shortly after moving to Florida in 1961 she made a new will with identical provisions.
In 1972 Helen sold the Illinois home place for $150,000, and James received his full share, $22,500. With part of the balance of the proceeds Helen purchased the home in Largo. In 1975 she made the new will described above. At that time she had about $106,000 in the bank accounts on which George's name had been added, and she explained the 10% bequest to Michael as an "evening up" because he had gotten only $12,000 for his interest in the Illinois family home, whereas James had gotten $22,500.
Helen had little or no "business sense" and was unable to read English. She trusted George implicitly and relied upon his advice in all matters. She was unconscious for several weeks before her death, and during that time George closed each of the *464 joint accounts by transferring the funds into accounts in his own name.
When Daniel and Michael intervened in the probate proceeding their attorney sent letters to each bank in which George had deposited the funds transferred from Helen's joint accounts, and those banks had placed a hold on all such funds, or "frozen" the accounts, as it is termed in the trade.
The probate court ruled that the relief requested by Daniel and Michael could be obtained only in an independent suit against George, and gave them 30 days within which to file such an action. Two days after that order was entered, George obtained what purported to be an order from the court stating that at that time there were no issues remaining in the probate proceeding pertinent to George's entitlement to the funds in his bank accounts. George used that "order" to obtain the release of his accounts.
Daniel and Michael then brought the instant action to enforce Helen's promise and to force George to bring the joint funds into the estate. The trial court agreed with George's contention that (1) an oral agreement to make a will is unenforceable in Florida and (2) George's entitlement to the funds he took from the joint accounts had been finally established in the probate proceeding and thus is no longer open to attack. A summary judgment was entered in favor of George, whereupon Daniel and Michael took this appeal. We reverse both aspects of the summary judgment.
In this state an oral agreement to make a will is unenforceable. § 732.701, Fla. Stat. (1975). It makes no difference where the agreement is made, or that it might be perfectly valid there; it is a nullity, insofar as Florida assets of the decedent are concerned. First Gulf Beach Bank and Trust Company v. Grubaugh, 330 So.2d 205 (Fla. 2d DCA 1976). However, the forerunner (§ 731.051) of our statute did not become effective until January 1, 1958, and oral agreements to make a will are enforceable in this state if they were entered into prior to that date and are otherwise valid. Keith v. Culp, 111 So.2d 278 (Fla. 2d DCA 1959), cert. denied, 114 So.2d 5 (Fla. 1959).[1]
On the motion for summary judgment the affidavits and depositions presented to the trial court were conflicting as to precisely when Helen and her sons made their agreement. The answer to that question will determine the enforceability of the agreement, and it is a matter that should have been and must be resolved by trial.
Appellants are also entitled to a trial of the question of appellee's entitlement to the funds he removed from the joint bank accounts. Contrary to appellee's assertion, the order of the probate court neither resolved nor purported to resolve that issue. The order merely confirmed that at that time there were no proceedings pending in the probate action which affected those funds. That was a true statement, but only because appellee had persuaded the court that an independent action would have to be filed.
Having closed the door to relief through the probate proceeding, by pointing to an assertedly "proper" entryway, appellee would now lock that door, too, completely ignoring the thirty-day safe passage granted appellants by the probate court.
The question to be resolved at the trial will be what Helen intended when George's name was added to her accounts. Any presumption that arose when she did so can be rebutted. Spark v. Canny, 88 So.2d 307, 311-312 (Fla. 1956). In opposing the motion for summary judgment below, appellants presented certain facts to the court which strongly suggest, at least, that when Helen made her last will she believed the funds in the joint accounts were hers and that they would pass by her will, so *465 that Michael would get another $10,000 or so to even up the shares he and James received of their father's estate. The facts also suggest a possible breach of a trust relationship or at least overreaching. In any event the issue involves a question of fact which the court erroneously attempted to dispose of by summary judgment.
The judgment is REVERSED and the case is REMANDED for trial in accordance with this opinion.
BOARDMAN and RYDER, JJ., concur.
NOTES
[1] While mere denial of certiorari does not necessarily indicate supreme court approval of a district court opinion, in this instance the supreme court later cited Keith as authority for the proposition that legislative amendments or enactments which affect private contracts are constitutional only if given prospective application. Springer v. Colburn, 162 So.2d 513, 516 n. 19 (Fla. 1964).