919 So.2d 595 (2006)
METRO BUILDING MATERIALS CORP. and Manuel Celaya Alberni, Appellants,
v.
REPUBLIC NATIONAL BANK OF MIAMI, Appellee.
Nos. 3D03-407, 3D03-1797.
District Court of Appeal of Florida, Third District.
January 18, 2006.
*596 Pollack & Rosen, P.A., and Mark E. Pollack, Coral Gables, for appellants.
Garbett, Bronstein, Stiphany & Allen, P.A., and David S. Garbett, Miami, and Elio F. Martinez, for appellee.
Before, COPE, C.J., GERSTEN, J., and DELL, JOHN W., Senior Judge.
COPE, C.J.
Metro Building Materials Corporation ("Metro") and Manuel Celaya Alberni ("Celaya") appeal a final judgment in favor of Republic National Bank ("Republic") on a series of promissory notes executed by Metro and related guarantees executed by Celaya. The final judgment also dismissed with prejudice Metro and Celaya's counterclaims.[1] We affirm.
In 1986 Republic extended a $50,000 line of credit to Metro which was in the business of selling building supplies. In January 1987, Metro converted its line of credit to a one year accounts receivable loan in the amount of $100,000. The loan was secured by Metro's accounts receivables as well as by guarantees from the principals of Metro, including Celaya. In June 1987, before the loan was due, Metro requested and received an increase in the line of credit to $200,000. A second $100,000 note and guarantees thereof were executed so *597 that the aggregate loan to Metro was $200,000 (the "accounts receivable loan").
In January 1988 Metro sought a further increase in the accounts receivable loan. A 60-day extension of the February 1988 due date of the loan was granted so that the request could be considered by Republic's loan committee and audited financial statements could be provided by Metro. Another promissory note was executed in connection with this extension, but Republic eventually declined to increase the loan, despite the audited financials and despite the support of some persons at Republic, including the loan officer who handled Metro's account.
After the bank refused to increase the loan, Republic offered Metro two different alternatives: 1) a one year extension of the loan with the same terms and guarantees; or 2) an extension to July 5, 1988 to permit Metro time to seek alternative financing. On May 17, 1988 Metro executed another note to cover the extension to July 5, 1988, thus accepting Republic's second alternative. Metro later paid the accounts receivable loan in full from the proceeds of alternative financing Metro obtained in November 1988. The bank never filed any action or claim against Metro in connection with that loan.
In a wholly separate transaction, in January 1987 Metro had executed a promissory note to Republic in the amount of $14,172.96 (the "January Note"). In yet another separate transaction, in May 1987 Metro executed another promissory note to Republic in the amount of $9,139.32 (the "May Note"). In addition to the foregoing loans, Metro maintained a checking account at Republic during the parties' banking relationship. In December 1988 Metro deposited a check in the account and withdrew the funds from the account. The check was later dishonored by the issuing bank which left an overdraft in the checking account.
In 1989, Republic filed this action seeking to recover on the January and May promissory notes as well as for the overdraft. Republic also sought to recover on Celaya's guarantee which covered the January note and the overdraft. Republic did not make any claims with regard to the accounts receivable loan in this action. Metro eventually filed counterclaims claiming that Republic had breached an oral agreement to renew and increase the accounts receivable loan from $200,000 to $300,000. Metro also claimed that Republic breached a separate oral agreement to renew the accounts receivable loan after maturity. In support of these claims Metro relied upon statements made by Republic's loan officer and by the analysis of Republic's lending department which Metro claimed supported the increase in the accounts receivable loan.
The trial court granted summary judgment in favor of Republic on the January and May promissory notes as well as on the claim based on the guarantee. Summary judgment was also entered in favor of Republic on the counterclaims. Ultimately final judgment in favor of Republic was entered in the amount of $178,141.82 which included attorney's fees for Republic.
In this appeal Metro claims that the trial court erred in granting summary judgment on the counterclaims. The trial court relied on section § 687.0304, Florida Statutes (1989), which is the statute of frauds for credit agreements. The statute precludes claims by borrowers based on oral lending agreements.[2]
*598 Metro claims that the statute is inapplicable because Republic filed this action in August 1989 and the statute did not become effective until October 1, 1989. See ch. 89-130, § 2, Laws of Fla. We conclude that the filing date of Republic's complaint is not the relevant date because Republic's complaint was not an action on an oral credit agreement.
Metro filed the counterclaims in May 1990which was after the effective date of the statute. The counterclaims were based on a lending transaction which was not related to Republic's original complaint and was thus only a permissive counterclaim.
Under the wording of the statute, "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the debtor and creditor." § 687.0304, Fla. Stat. (1989) (emphasis added). Because the statute precludes the maintaining of an action unless the conditions are met and because the statute became effective before the counterclaim was filed, we conclude that the statute is applicable to the counterclaims. The counterclaims allege breach of an oral agreement to either extend or renew the accounts receivable loan. The statute bars the counterclaims. See Puff'N Stuff of Winter Park, Inc. v. Bell, 683 So.2d 1176, 1177 (Fla. 5th DCA 1996).
Metro also claims that even if the statute applies, it does not bar its claims. Metro argues that it fully performed its side of the bargain to extend the accounts receivable loan for one year by completing the loan application and by hiring a certified public accountant to provide the audited financial statements requested by Republic. Metro points out that precedent under the ordinary statute of frauds holds that "[f]ull performance by one party to an oral contract removes the contract from the statute of frauds." Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc., 891 So.2d 1142, 1144 (Fla. 4th DCA 2005) (citations omitted). See also J Square Enterprises v. Regner, 734 So.2d 565, 566 (Fla. 5th DCA 1999) (no logical reason why the full performance doctrine should not apply to the bank statute of frauds).
We cannot accept the proposition that submitting a completed application for credit constitutes full performance on the borrower's side so as to take the transaction out of the statute of frauds. Submission of an application and associated documentation constitutes a request for credit but does not bind the lender to extend the credit. See Financial Federal Savings & Loan Assoc. of Dade County v. Continental Enterprises, Inc., 338 So.2d 907, 908 (Fla. 3d DCA 1976).
Metro acknowledges that the loan application had to be approved by the lending committee and that optimistic statements by its lending officer did not eliminate the need for committee approval. In addition, *599 at least one of the previous guarantors would not renew his guarantee so that Metro could not comply with Republic's offer to extend the loan for one year on the same conditions previously established.
Finally, Metro argues that it should have been permitted to use the counterclaims with respect to the accounts receivable loans as an affirmative defense or setoff to the amounts claimed by Republic on the January and May notes and the overdraft. The Fifth District has said, "Section 687.0304 prevents a debtor from bringing a claim based on an oral credit agreement but does not prevent a debtor from asserting affirmative defenses based on an oral credit agreement." Maynard v. Central National Bank, 640 So.2d 1212, 1213 (Fla. 5th DCA 1994) (citing Brenowitz v. Central National Bank, 597 So.2d 340, 343 (Fla. 2d DCA 1992)); see also Eboni Beauty Academy v. AmSouth Bank of Florida, 761 So.2d 481, 482 (Fla. 5th DCA 2000); Consortion Trading International, Ltd. v. Lowrance, 682 So.2d 221, 222 (Fla. 3d DCA 1996).
We conclude that Metro's reliance on the cited cases is misplaced. In the cited cases, the bank filed suit on a past due loan and the borrower asserted an affirmative defense to the same loan. The present case differs because Metro is not asserting an affirmative defense to the loans Republic sued on. Metro's claim is that Republic breached an oral promise to lend an additional amount on a different loan the accounts receivable loan. That being so, Metro is outside the scope of the "affirmative defense" exception addressed in Maynard.
The trial court was correct in entering summary judgment.
Affirmed.
NOTES
[1] Appellants will hereafter collectively be referred to as "Metro".
[2] In pertinent part Section 687.0304 states:

(2) CREDIT AGREEMENTS TO BE IN WRITING.A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions and is signed by the creditor and debtor.
(3) ACTIONS NOT CONSIDERED AGREEMENTS.
(a) The following actions do not give rise to a claim that a new credit agreement is created unless the agreement satisfies the requirements of subsection (2):
1. The rendering of financial advice by a creditor to a debtor;
2. The consultation by a creditor with a debtor; or
3. The agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements.