DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WELLS FARGO BANK, N.A.,**
Appellant,

v.

**LARRY M. RICHARDS** and **MARGARET RICHARDS,**
Appellees.

Nos. 4D16-1364
and 4D16-2033

[August 30, 2017]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 2012-CA-005363-XXXX-MB (AI).

Kimberly S. Mello and Jonathan S. Tannen of Greenberg Traurig, P.A., Tampa, and Michele L. Stocker of Greenberg Traurig, P.A., Fort Lauderdale, for appellant.

Steven M. Singer of Steven M. Singer, P.A., Plantation, and Mark Feinstein of Feinstein & Sorota, P.A., Plantation, for appellees.

GROSS, J.

The parties to this appeal of a foreclosure judgment attended mediation prior to trial. The homeowners left mediation believing they reached a very, very favorable settlement agreement with the bank that would permanently modify their loan. When the bank did not honor the terms of that perceived agreement, the homeowners moved to enforce the settlement, which the trial court granted. Because oral modification of a credit agreement is precluded by both the statute of frauds and the Banking Statute of Frauds, we reverse.

At the hearing on the motion to enforce, the homeowners conceded no written settlement agreement was signed at the mediation or afterwards. They also acknowledged the bank provided a written final loan modification agreement, which they refused to sign because it included terms different from what they claimed to be the mediation agreement. To describe the homeowners' testimony on the key terms of the loan

modification as imprecise is an understatement.[1]   The homeowners insisted the loan modification was for an amount significantly lower than what was owed on the original loan.

Because the bank had no witness to testify to what happened at mediation, the trial court found the homeowners' vague testimony "fully credible" and granted their motion to enforce the oral settlement agreement.   There are a variety of reasons this was error, such as the requirement found in Florida Rule of Civil Procedure 1.730(b) that mediation agreements must be reduced to writing.   However, the only arguments preserved for appeal are those based on the general statute of frauds and the Banking Statute of Frauds.

The original statute of frauds was first enacted in England in 1677.  29 Chas. II, c. 3 (1677); *see* § 725.01, Fla. Stat. (2016).   The statute's centuries-long history includes the evolution of a variety of equitable defenses such as the doctrine of full or complete performance.   Many states, including Florida, have recognized these common-law exceptions to their codification of the statute of frauds.  *See Hiatt v. Vaughn*, 430 So. 2d 597 (Fla. 4th DCA 1983); *see also Terzis v. Pompano Paint & Body Repair, Inc.*, 127 So. 3d 592, 595 (Fla. 4th DCA 2012) ("full performance by one party to the contract works to remove an oral agreement from the purview of the statute of frauds") (quoting *101 Monument Rd., Inc. v. Delta Prop. Mgmt., Inc.*, 993 So. 2d 181, 182 (Fla. 4th DCA 2008)).

By contrast, credit-agreement statutes, referred to in Florida as the Banking Statute of Frauds, are a relatively new creation.   They were enacted by many states in the mid-1980's to address a surge in lawsuits brought by borrowers against lending institutions for breach of oral commitments regarding new or existing loans.   *See* John C. Murray, *Credit-Agreement Statutes Revisited: Are Equitable Defenses Permitted?*, 51 REAL PROP. TR. & EST. L.J. 373, 374 (2017).   In an attempt to thwart these types of cases, states either enacted statutes that brought credit agreements within the scope of the statute of frauds or created a separate Banking Statute of Frauds, as Florida did in 1989 with the enactment of section 687.0304, Florida Statutes.

---

[1] We note that the bank's lawyer failed to object to this testimony even though all mediation communications are privileged and a mediation party can "prevent any other person from testifying in a subsequent proceeding regarding mediation communications."   § 44.405(2), Fla. Stat. (2016).   The attorneys bringing this appeal did not represent the bank in the circuit court.

The purpose of these statutes was to discourage lender liability actions based on purported oral credit agreements. Jeffrey A. Tochner, *Limiting Lender Liability in Florida: The Application of a Statute of Frauds to Credit Agreements*, 44 FLA. L. REV. 807, 828 (1992) (citing H.R. OF FLORIDA, COMM. ON COMMERCE, FINAL STAFF ANALYSIS AND ECONOMIC IMPACT STATEMENT ON H.B. 878, at 2). This purpose was achieved by "severely restricting borrowers' ability to sue creditors." *Id.*

Section 687.0304(2) provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." A credit agreement is defined as "an agreement to lend or forbear repayment of money . . . to otherwise extend credit, or to make any other financial accommodation." § 687.0304(1)(a). A "loan modification agreement . . . is both an agreement which extends credit and which makes a financial accommodation," thus implicating the Banking Statute of Frauds. *Vargas v. Deutsche Bank Nat'l Trust Co.*, 104 So. 3d 1156, 1168 (Fla. 3d DCA 2012).

The Banking Statute of Frauds applied to the purported oral loan modification in this case. We reject the homeowners' claim that the doctrine of full performance removed the modification from the statute's purview. First, allowing borrowers to use equitable doctrines offensively to establish enforceable oral credit agreements would eviscerate the purpose of the Banking Statute of Frauds. Second, even if the doctrine could be used offensively, by their own testimony, the homeowners had not fully performed the alleged loan modification.

Equitable doctrines, like full performance, are typically used defensively to prevent a plaintiff from unjustly claiming rights under an agreement. *See, e.g., United of Omaha Life Ins. Co. v. Nob Hill Assocs.*, 450 So. 2d 536 (Fla. 3d DCA 1984) (allowing estoppel as a defense to the statute of frauds where a party detrimentally relied on the promise of another).

Despite the existence of these equitable doctrines, the American Bar Association created a model credit-agreement statute that expressly precluded borrowers from maintaining actions or defenses based on traditional equitable theories. John C. Murray, *Credit-Agreement Statutes Revisited: Are Equitable Defenses Permitted?*, 51 REAL PROP. TR. & EST. L.J. 373, 397 (2017). As commentary explained, the model statute sought to "foreclose 'end runs'" under equitable theories because "[w]ithout such a provision, experience tells us that borrowers will seek such relief, and that courts may sometimes afford such relief." *Id.*

Florida chose not to follow the ABA's model statute and some courts have permitted borrowers to use equitable theories *defensively* where the lender made oral promises upon which a borrower relied. *See Metro Bldg. Materials Corp. v. Republic Nat'l Bank of Miami*, 919 So. 2d 595, 598 (Fla. 3d DCA 2006); *J Square Enters. v. Regner*, 734 So. 2d 565, 566 (Fla. 5th DCA 1999). Notably, these opinions provide no real analysis explaining why equitable doctrines should be permitted as defenses to the Banking Statute of Frauds.

This failure is troubling in light of decisions precluding equitable defenses in other, similar contexts, like the statute of frauds applicable to wills and devises of real property. § 732.701, Fla. Stat. (2016). As we have explained, section 732.701 pertaining to agreements concerning succession, is "not a typical statute of frauds," so the legislature must have "had more in mind than simply extending the statute of frauds to contracts for bequests of personality" and "permit[ing] part performance . . . to obviate the statute would be to thwart its obvious purpose." *Renfro v. Dodge*, 520 So. 2d 690, 691 (Fla. 4th DCA 1988) (quoting *First Gulf Beach Bank & Tr. Co. v. Grubaugh*, 330 So. 2d 205, 210 (Fla. 2d DCA 1976)).

Similarly, the point of the Banking Statute of Frauds is to preclude precisely the type of oral modification that the homeowners assert. There is no indication in the statute that the legislature intended to import three centuries of case law into the new statute to permit the creation of oral modification to credit agreements. Unlike the face-to-face interaction with a neighborhood bank, typical for so many years, modern banks have thousands of employees, who, with the aid of computers, communicate with customers by phone and e-mail. The statute creates order by imposing the requirement of a writing under section 687.0304(2) to memorialize agreements and to separate negotiations from an enforceable contract.

The homeowners' motion to enforce the oral settlement agreement was tantamount to "maintain[ing] an action on a credit agreement" not "in writing," which is prohibited by section 687.0304(2). Used offensively, the motion improperly sought to establish the validity of the oral agreement and sidestep the statute. *See Brenowitz v. Central Nat'l Bank*, 597 So. 2d 340 (Fla. 2d DCA 1992).

Even if the doctrine of full performance could be utilized to avoid the Banking Statute of Frauds, the homeowners clearly did not perform the alleged oral loan modification. They presented no evidence that the loan was paid in full and based on the terms to which the homeowners testified, the alleged modification was for a period of 40 years "or something."

Borrowers who merely agree to a loan modification with a lender to pay less than they owe over a longer term than the original loan have not given "full performance" under the contract as that doctrine has developed over the centuries.

Similarly, there was no complete performance of the loan modification that would avoid the traditional statute of frauds. The statute provides, in pertinent part,

> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

§ 725.01, Fla. Stat. (2016). This court has reversed enforcement of a purported oral modification of a mortgage because "it [was] apparent from the terms of the mortgage and the note that neither party intended for appellee to repay the loan within one year of the signing of the agreements." *Ocwen Loan Servicing, LLC v. Delvar*, 180 So. 3d 1190, 1193-94 (Fla. 4th DCA 2015). As such, the modification was within the statute of frauds and was required to be in writing. *Id.* at 1194. Here, the term of the new loan agreement was 40 years "or something," so the oral modification fell within the statute of frauds. As we discussed above with section 687.0304, there was no full performance here that would remove the oral modification from the statute of frauds. *See Metro Bldg. Materials*, 919 So. 2d 595.

The trial court's order granting enforcement of the oral settlement agreement and the attorney's fee award are reversed and the case is remanded to the trial court for further proceedings.

MAY and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***