George E. **HOMIER** and Maureen Gale Homier, both individuals, d/b/a George Homier Trucking, Gene Houghton, an individual, and G.H. Enterprises, a partnership, whose partners are George Homier and Gene Houghton, Plaintiffs–Appellants,

v.

**FARICY TRUCK & EQUIPMENT COMPANY, a Colorado corporation, Defendant–Appellee.**

No. 87CA1513.

Colorado Court of Appeals, Div. V.

Dec. 8, 1988.

As Modified on Denial of Rehearing Aug. 24, 1989.

Certiorari Denied Dec. 18, 1989.

Branden, Frindt & Krall, P.C., Ralph A. Branden, Jr., Colorado Springs, for plaintiffs-appellants.

Rector, Retherford, Muller & Johnson, L. Dan Rector and Neil C. Bruce, Colorado Springs, for defendant-appellant.

Opinion by Judge JONES.

In this contract action, plaintiffs (collectively Homier) appeal judgments entered against them after a trial to the court on their claims against defendant, Faricy Truck and Equipment Company (Faricy), and on defendant's counterclaims for deficiency. We reverse and remand for further proceedings.

Homier and Faricy entered into a written agreement whereby Homier, designated as purchaser, would purchase from Faricy, designated as seller, a truck with a 15–foot dump body. The dump body was to be manufactured and mounted by Cal Pro Group, which was owned by one Caler.

The vehicle which Faricy had in stock was comprised simply of a cab and chassis without the dump body. In order to fit the dump body onto the chassis, Caler shortened the wheel base of the chassis. For this service, he billed Faricy $500. Caler performed the construction and installation of the dump body for the agreed amount of $7,500. The total amount of $8,000 was paid to him by Faricy. Upon completion of the work, Caler delivered the vehicle—with the mounted dump body—to Faricy.

Pursuant to the written agreement between Faricy and Homier, Faricy delivered the vehicle to Homier for the contract price of $47,863 included the $7,500 specifically allocated for payment for the dump body.

The very day upon which the whole unit was delivered to Homier, problems with the vehicle were observed. When Homier's employees reported these problems to Faricy, they were instructed to return the vehicle to Caler for repair.

Approximately two weeks after delivery to Homier, as the dump body was being hydraulically lifted to discharge a load, it fell off the truck, tipping the rear portion of the vehicle on its side. This incident involved neither improper use nor negligence on the part of Homier's employee.

The unit was taken to Faricy for repairs. Faricy removed the dump body from the truck, straightened the chassis and dump body, and remounted the dump body onto

the truck. The vehicle was out of service for one month while repairs were made.

After completion of the repairs, the vehicle was returned to Homier. Faricy's employees assured Homier that it would be fully operational after the repairs. Homier soon discovered, however, that the vehicle was unstable, and that additional repairs were required. Faricy made these repairs. Within a month after the vehicle was returned to Homier, it once again tipped over during normal unloading operations, with the dump body falling off the chassis.

After the second tip-over, the truck was again returned to Faricy for repairs. Faricy had the truck repaired by another company, after which it was again returned to Homier. Homier soon discovered that the truck would start to tip over even when the dump body was raised without a load. Further repairs were made and, from time to time thereafter, it was inoperative. In the seven months after delivery to Homier, the vehicle was only operational for approximately 30 days.

Thereafter, Homier informed Faricy as follows:

"This letter shall serve as Homier's revocation of the truck. Accordingly, Homier hereby demands that you accept re-delivery of the truck and cancel the Agreement of Purchase and Sell, that you refund all monies paid to Faricy (as downpayment or otherwise), and that the Promissory Note which Homier executed as part of the purchase price be returned to Homier."

This letter constituted Homier's revocation of acceptance pursuant to § 4–2–603, C.R.S.

At the time of Homier's notice of revocation of acceptance, the vehicle was in the possession of Faricy. Thereafter, Faricy conducted a sale of the vehicle pursuant to § 4–9–504, C.R.S., claiming a deficiency of $15,700. After acquiring title to it as sole bidder at the sale, Faricy sold the vehicle to an independent third-party for $43,000.

Homier filed suit against Faricy and Caler claiming revocation of acceptance of the truck, damages from defects on the basis of products liability, negligence, and breach of express and implied warranty. Caler failed to answer the complaint, whereupon default judgment was entered separately against him. This matter was tried to the court, which entered judgment against Homier and in favor of Faricy. The trial court concluded that the contract between Faricy and Homier provided only for sale of the cab and chassis and not the dump body, and that, therefore, the entire truck-unit was not a commercial unit. The court further found that only limited warranties applied to Faricy.

## I.

Homier first contends that the trial court erred in determining that, because they had not contracted to purchase a commercial unit, they cannot have revoked acceptance of the truck-unit pursuant to § 4–2–608, C.R.S. We agree.

■ Applying Article 2 of the Uniform Commercial Code (U.C.C.), we initially conclude that the subject truck-unit constitutes "goods," *see* § 4–2–105(1), C.R.S., and that Faricy as "seller," *see* § 4–2–103(1)(a), C.R.S., and Homier as a "buyer," *see* § 4–2–103, C.R.S., completed a "sale" of those goods because there was a "passing of title from the seller to the buyer for a price." Section 4–2–106(1), C.R.S. Since profit is not a condition for the existence of a sale, Faricy's contention that it did not make a profit in the transaction is without significance.

■ A commercial unit is "such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market *or in use.*" Section 4–2–105(6), C.R.S. (emphasis added). A commercial unit may be a single article, but need not be. *See* § 4–2–105, C.R.S.; 1 R. Anderson, *Uniform Commercial Code,* § 2–105:11 (3d ed.1981).

■ Our consideration of the statute as a whole reveals that the general assembly intended that a commercial unit generally be an article or thing made up of various articles, the whole of which is to be treated

in its use or in the relevant market as a single integrated unit. *See* § 4–2–105(6), C.R.S. *Accord Rexite Casting Co. v. Midwest Mower Corp.*, 267 S.W.2d 327 (Mo. App.1954).

The definition of commercial unit as incorporated into the U.C.C. arose out of case law existing prior to its adoption. *See Glen O'Brien Movable Partition Co. v. McMullen*, 608 S.W.2d 512 (Mo.App.1980). This case law involved severability of contractual provision. *See Rexite Casting Co. v. Midwest Mower Corp., supra.* However, pre-U.C.C. decisions as to what constitutes a commercial unit are not to be followed if contrary to U.C.C. provisions. *See Badger Produce Co. v. Prelude Foods International*, 130 Wis.2d 230, 387 N.W.2d 98 (1986). Therefore, the question of whether various articles, when taken together, constitute a commercial unit has been held to be discernible from the contract itself. *See Glen O'Brien Movable Partition Co. v. McMullen, supra.*

■ If various portions of a contract were intended by the contracting parties to be severable, it has been held that the articles themselves are divisible and, therefore, could not be commercial units. *Cf. Glen O'Brien Movable Partition Co. v. McMullen, supra.* Whether a contract is indivisible or severable is a question of intention to be determined from the language and subject matter of the contract itself. *See Glen O'Brien Movable Partition Co. v. McMullen, supra; Rexite Casting Co. v. Midwest Mower Corp., supra. See also John v. United Advertising, Inc.*, 165 Colo. 193, 439 P.2d 53 (1968).

■ In Colorado, for a contract to be severable, the language of the contract must evince the parties' intention to have assented separately to successive divisions of the contract, upon performance of which the other party would be bound. Thus, it is not the number of items in the contract which is determinative of whether it is severable, but the nature of the object or objects in the contract. *See L.U. Cattle Co. v. Wilson*, 714 P.2d 1344 (Colo.App. 1986); *Gomer v. McPhee*, 2 Colo.App. 287, 31 P. 119 (1892).

■ The interpretation of an established written contract is generally a question of law for the court. *I.M.A., Inc. v. Rocky Mountain Airways Inc.*, 713 P.2d 882 (Colo.1986); *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984). Thus, the interpretation is subject to independent reevaluation by an appellate court. *I.M.A., Inc. v. Rocky Mountain Airways Inc., supra; Radke v. Union Pacific Railroad*, 138 Colo. 189, 334 P.2d 1077 (1958).

■ Here, there is no uncertainty of meaning of the language used in the contract. *Cf. Bledsoe v. Hill*, 747 P.2d 10 (Colo.App.1987). Therefore, the contract is not ambiguous. *See Pepcol Manufacturing Co. v. Denver Union Corp., supra.* The contract calls for the purchase by Homier of a truck, consisting of a cab and chassis with a 15–foot dump body. Nowhere does it indicate any intention of the parties that the cab and chassis be considered separate and apart from the dump body.

Thus, the contract reflects that the truck-unit, comprising a cab, chassis, and dump body, was a commercial unit as defined by pursuant to § 4–2–105(6).

## II.

■ Homier next contends that the trial court erred in concluding that Homier failed to prove that a revocation of acceptance of the truck-unit had been accomplished. Again, we agree.

Revocation of acceptance is governed by § 4–2–608, C.R.S., which provides, in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

Here, as we ruled above, the dump truck unit which Homier purchased from Faricy was a commercial unit. Furthermore, the evidence demonstrates that, as a matter of law, nonconformity, which was not seasonably cured, substantially impaired its value, and that Homier timely revoked acceptance and so notified Faricy. The trial court erred in ruling to the contrary.

Accordingly, the judgment of the trial court as to Homier's claims is reversed and the cause is remanded to the trial court for vacation of the judgment on behalf of Faricy and for entry of judgment on behalf of Homier and for dismissal of Faricy's counterclaims. In addition, it is directed that a new trial be held on the issue of damages recoverable by Homier.

PLANK and NEY, JJ., concur.