**PIMA FINANCIAL SERVICE CORPORATION, an Arizona corporation and Resolution Trust Corporation, as receiver for Pima Savings & Loan Association, an Arizona corporation, Plaintiffs–Appellees,**

**v.**

**Jeffrey B. SELBY, Defendant–Appellant,**

**and**

**Roaring Fork Investments, Counterclaimant–Appellant.**

No. 90CA0722.

Colorado Court of Appeals, Div. I.

April 25, 1991.

Rehearing Denied June 13, 1991.

Certiorari Denied Nov. 25, 1991.

Hecox, Tolley, Keene & Beltz, P.C., John W. Sabo, III, Cynthia M. Dude, Colorado Springs, for plaintiffs-appellees.

Holmes & Starr, P.C., Jeffrey Reiman, Gwen J. Young, Denver, for defendant-appellant and counterclaimant-appellant.

Opinion by Judge CRISWELL.

Defendant, Jeffrey B. Selby, and counterclaimant, Roaring Fork Investments (Roaring Fork), a partnership consisting of defendant and another party, appeal from an order of the trial court denying their motion to enforce a purported settlement agreement with the plaintiff, Pima Financial Services Corporation, and with the Resolution Trust Corporation, as the receiver for Pima Savings & Loan Association (collectively Pima). We affirm.

After foreclosing upon certain property securing the repayment of a promissory note executed by Roaring Fork, the payment of which was guaranteed by defendant, plaintiff brought this action to recover a deficiency judgment. The defendant answered and he and Roaring Fork counterclaimed against Pima asserting various "lender liability" claims against them.

The parties thereafter admittedly entered into settlement negotiations at the end of which defendant and Roaring Fork tendered to Pima a written settlement agreement. By the terms of this proposed written agreement, Pima was to purchase for a specified price certain real property in which defendant had an interest, and both Pima's claim and all of the counterclaims were to be dismissed with prejudice.

However, Pima refused to execute this tendered document. While the Pima representatives acknowledged that various aspects of a possible settlement similar to that set forth in the agreement had been discussed, they asserted that no agreement had been reached upon such terms and that, upon further consideration, they declined to settle the litigation on the bases proposed.

Thereupon, defendant and Roaring Fork filed with the trial court a "motion to enforce settlement agreement" in which they described their version of the negotiations, alleged that a firm understanding upon the terms set forth in the written agreement tendered to Pima had been reached, and sought "appropriate orders designed to enforce that agreement." While they did not specifically seek to file any supplemental counterclaim based on their alleged settlement agreement, their motion noted that, if the court was of the view that a supplemental pleading was necessary to present the issue, this motion "should be deemed as such a Motion to Supplement." They did not, however, tender any supplemental pleading. *See* C.R.C.P. 15(d).

Pima filed a written response to this motion, attaching three affidavits. This response, while objecting on the merits to the relief requested in the motion, raised no objection to the procedure adopted by defendant and Roaring Fork in bringing the issue before the court. Likewise, the record on appeal contains no objection by the trial court to this procedure.

The trial court considered this motion and Pima's response thereto, as well as affidavits and other evidentiary materials submitted by the parties. After such consideration, it concluded that it was unneces-

sary for it to determine whether there had been a meeting of the minds of the parties upon the terms of a possible settlement. Rather, it concluded that, because the alleged settlement agreement constituted a "credit agreement" within the meaning of § 38–10–124, C.R.S. (1990 Cum.Supp.), it could not be enforced because the parties had not reduced it to writing. Thus, it entered an order denying the motion based on their alleged settlement agreement.

Thereafter, upon defendant's request, the court entered a further order determining that the motion represented a separate claim for relief within the meaning of C.R.C.P. 54(b) and that there was no just reason for delay and directing that a judgment enter "as to the issues set forth" in the court's order denying the motion.

Based upon this latter order, defendant and Roaring Fork filed their notice of appeal with this court.

## I.

This record requires us to consider a threshold jurisdictional issue. Recognition of that issue caused us to request the parties to file supplemental briefs upon that issue, and they have done so.

■ When more than one "claim" is asserted in an action, the determination of less than all of the claims asserted does not result in a final judgment, unless the court certifies that there is no just reason for delay and directs the entry of judgment with respect to the claim or claims adjudicated. C.R.C.P. 54(b). And, absent the adjudication of an "entire claim," a trial court cannot turn an otherwise preliminary order into a final judgment. *Harding Glass Co. v. Jones*, 640 P.2d 1123 (Colo. 1982).

■ Further, the rules contemplate that a claim for relief, by whomever asserted, be contained within one of the pleadings authorized by C.R.C.P. 7(a). *See also* C.R.C.P. 8, 10 and 15. The rules do not contemplate that a true claim for relief may be asserted by means of a motion. Rather, it is contemplated that a claim be asserted in a pleading, so that appropriate

defenses can be set forth in a responsive pleading. *See* C.R.C.P. 8; *Bernstein v. Dun & Bradstreet, Inc.*, 149 Colo. 150, 368 P.2d 780 (1962); *Markoff v. Barenberg*, 149 Colo. 311, 368 P.2d 964 (1962).

■ Here, the motion filed by defendant and Roaring Fork contained allegations that Pima had entered into an agreement, but had violated that agreement. The relief requested by that motion was similar to the equitable remedy of specific performance. These allegations, therefore, were an attempt to assert a claim for relief. As such, they were required to be asserted in a supplemental pleading, if authorized to be filed by the court under C.R.C.P. 15(d), and not in an unauthorized motion. *See Eagle River Mobile Home Park, Ltd. v. District Court*, 647 P.2d 660 (Colo.1982).

On its face, therefore, the order of the trial court denying the motion of defendant and Roaring Fork is not an order that is capable of being made final under C.R.C.P. 54(b). Facially, it is simply a preliminary order.

Yet, both the parties and the trial court treated that motion as a supplemental counterclaim, setting forth a claim arising after the parties' initial pleadings had been filed. And, the written response filed by Pima was accompanied by affidavits and constituted the practical equivalent of a motion for summary judgment. Further, the order denying this motion purported to dispose of a claim which, had it been contained within a pleading, would have been an entire, separate claim for relief. Thus, both the parties and the court itself consented to the procedure used to dispose of the issues underlying the supplemental claim asserted.

The supreme court has specified that, in determining whether a particular order constitutes a final judgment, our "attention should be directed to the legal effect of the order rather than the form." *Levine v. Empire Savings & Loan Ass'n*, 192 Colo. 188, 557 P.2d 386 (1976) (order striking class action allegations had legal effect of dismissing claims of class members). And, we conclude that the legal effect of the

trial court's order was to dismiss an entire claim for relief.

Hence, although we disapprove of the procedure utilized to bring the issue before the trial court, we conclude that that court was authorized to direct the entry of judgment dismissing the claim under C.R.C.P. 54(b). The trial court having done so, we are vested with jurisdiction over this cause.

## II.

With respect to the substantive merits of the trial court's order, defendant and Roaring Fork first argue that that court erred in concluding that the purported agreement between the parties constituted a "credit agreement" within the meaning of § 38–10–124, C.R.S. (1990 Cum.Supp.). We conclude that the trial court committed no error in this respect.

■ Section 38–10–124(2), C.R.S. (1990 Cum.Supp.), provides that:

"[N]o debtor or creditor may … maintain … a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and signed by the party against whom enforcement is sought."

This provision applies only to "credit agreements entered into on or after July 1, 1989." Colo.Sess.Laws 1989, ch. 319 at 1439.

Section 38–10–124(1)(a)(I), C.R.S. (1990 Cum.Supp.) generally defines a "credit agreement," among other contracts, as a "contract, promise, [or] undertaking … to … repay … money." And, the parties are in agreement that the original undertakings by defendant and Roaring Fork in connection with the promissory note and its guaranty was a "credit agreement" within the meaning of this statutory definition. However, those undertakings were entered into before July 1, 1989, so that § 38–10–124(2) does not apply to those original promises.

■ Nevertheless, § 38–10–124(1)(a)(II), C.R.S. (1990 Cum.Supp.) also defines a "credit agreement" as any "*amendment* of, *cancellation* of, *waiver* of, or *substitution* for any and all terms or provisions of any of the credit agreements defined in" § 38–10–124(1)(a)(I) (emphasis supplied). Thus, if a later agreement amends, cancels, or waives any terms or provisions of a previous credit agreement, or if that latter agreement is substituted for the previous credit agreement, that latter agreement is also a "credit agreement" under the statute.

Hence, if such an amendment, cancellation, waiver, or substituted agreement is entered into on or after July 1, 1989, it is a "credit agreement" subject to the terms of § 38–10–124(2) and is unenforceable unless reduced to writing. *See Carlson v. Estes*, 458 N.W.2d 123 (Minn.App.1990) (oral agreement to lower interest rate called for by previous credit agreement is itself a credit agreement to which similar Minnesota statute applies).

Here, the claim for a deficiency asserted by Pima was based upon a credit agreement involving an original principal sum of more than $25,000, which was entered into before July 1, 1989. And, the alleged settlement agreement, if properly entered into, would have canceled or waived that original agreement and would have substituted therefor a new agreement, which called for substituted performances by all parties. Hence, that alleged settlement agreement was itself a "credit agreement" under the statute, and since the parties allegedly entered into that agreement after July 1, 1989, the trial court committed no error in concluding that § 38–10–124(2) applied to that purported agreement.

## III.

■ Defendant and Roaring Fork argue, nevertheless, that, even if the statute would otherwise apply to the alleged oral settlement agreement upon which they rely, that statute should not be applied here because the "context" of the *transaction* involved—the settlement of a controversy before a judicial forum—militates against its applicability. This contention is grounded upon the provision in § 38–10–124(1) that the specific statutory definitions

of "credit agreement" set forth in that statute are to be applied *"unless the context* otherwise requires." (emphasis supplied) We conclude, however, that this contention is based upon an erroneous premise.

The statutory phrase, "unless the context otherwise requires," does not refer to the "context" of a particular transaction, so that a court is required to determine, on a case-by-case basis, whether the specific statutory definition is to be applied to that transaction. Rather, this is a common statutory admonition, *see* § 2–4–401, C.R.S. (1980 Repl.Vol. 1B), which refers to the context within which the term, "credit agreement," is used within the statute's substantive provisions. It does not refer to the "context" of some individual transaction. *See Tobias v. State*, 41 Colo.App. 444, 586 P.2d 669 (1978) (context of substantive statutory provisions does not mandate that specific definition of "registered mail" as including "certified mail" be rejected).

Thus, the phrase requires only that we examine § 38–10–124 itself to determine whether the context of any of its substantive provisions necessarily requires some meaning to be given to the term, "credit agreement," other than the ones adopted by the definitional portion of that statute. And, having examined those provisions, we find nothing within them that would support the conclusion that some meaning of the relevant term, other than that set forth in § 38–10–24(1)(a), was intended to be applied to the purported settlement agreement relied upon by defendant and Roaring Fork.

Therefore, because the purported settlement agreement was a "credit agreement" that had not been reduced to writing, § 38–10–124(2) prohibited its enforcement.

Judgment affirmed.

PIERCE and REED, JJ., concur.