597 So.2d 340 (1992)
Larry P. BRENOWITZ, Tonya Brenowitz, and H.L. International, Inc., Appellants,
v.
CENTRAL NATIONAL BANK, Appellee.
No. 91-00131.
District Court of Appeal of Florida, Second District.
April 8, 1992.
*341 Charles J. Bartlett of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for appellants.
R. Lynette Mancuso of Syprett, Meshad, Resnick & Lieb, P.A., Sarasota, for appellee.
DANAHY, Acting Chief Judge.
In this case we review a summary judgment entered in favor of the appellee (the Bank) in an action brought by the Bank against the appellants (Brenowitz)[1] after Brenowitz defaulted on a promissory note owed to the Bank. We reverse because we find there remain material factual disputes; in so doing we must construe, differently from the trial court, the "new" statute of frauds provision contained in section 687.0304, Florida Statutes (1989).
The Bank filed suit after several installment payments were past due and after it made a demand for acceleration under the default provisions of the written loan agreement. Brenowitz answered the complaint asserting several affirmative defenses which sounded in waiver, estoppel and bad faith. The affirmative defenses are based, in part, on discussions that occurred at a meeting between Brenowitz and officers of the Bank subsequent to the default and the Bank's acceleration. The discussions were to the effect that if Brenowitz brought his interest payments up to date and provided more security for his loan, the Bank would stay its demand for acceleration. Brenowitz also claimed in these affirmative defenses that he had been previously induced to buy stock in the Bank in exchange for an assurance that as long as he remained a stockholder, and the interest payments remained current, the note would be continuously renewed. By affidavit, the Bank's representatives admitted that a meeting and conversation took place but denied that any such agreement was reached. The Bank put into evidence a letter, dated two days after the meeting, from the president of the Bank to Brenowitz memorializing this meeting. In this letter the president acknowledged that the past due interest had been brought current subsequent to the meeting, but that neither these payments nor the results of the discussion between the parties had changed or cured the default status of the loan nor extended the demand period for acceleration.
These contradictory versions of the results of the parties' meeting show material factual conflicts which should have precluded summary judgment. The Bank, however, pressed the trial court to a conclusion that the summary judgment was mandated in any event because Brenowitz's affirmative defenses were rendered legally inoperative by section 687.0304, Florida Statutes (1989), which states the following:
687.0304 Credit agreements. 
(1) DEFINITIONS.  For the purpose of this section:
(a) "Credit agreement" means an agreement to lend or forbear repayment of money, goods, or things in action, to *342 otherwise extend credit, or to make any other financial accommodation.
(b) "Creditor" means a person who extends credit under a credit agreement with a debtor.
(c) "Debtor" means a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.
(2) CREDIT AGREEMENTS TO BE IN WRITING.  A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
(3) ACTIONS NOT CONSIDERED AGREEMENTS. 
(a) The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subsection (2):
1. The rendering of financial advice by a creditor to a debtor;
2. The consultation by a creditor with a debtor; or
3. The agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements.
(b) A credit agreement may not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.
This statute has been labeled by a commentator as a "new" statute of frauds which was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender.[2] Both parties' arguments are based on Minnesota cases construing that state's statute[3] upon which the Florida statute was patterned.[4]
The Bank argues that, assuming Brenowitz's version of the agreement is correct, such agreement falls within the new statute, and, since this agreement was not reduced to writing, the statute denies any legal effect to a claim based upon it. Therefore, the Bank's argument continues, since all Brenowitz's affirmative defenses are based on an unwritten agreement, they must fail too.
Brenowitz counters that his affirmative defenses do not equate to an action against the Bank maintained by him as debtor, do not involve significant changes in the original agreement between the parties, and do not seek money damages for breach of the alleged agreement, all of which are circumstances in the Minnesota cases and circumstances likewise anticipated by the Florida statute. Brenowitz urges this court to reject the Bank's interpretation of the statute inasmuch as the Bank's interpretation would effectively vitiate the established equitable defenses of waiver, estoppel, and bad faith. According to Brenowitz, to adopt the Bank's interpretation of allowing the statute to remove a defendant's access to these long-standing equitable defenses would transform them into independent claims, claims usually found in original complaints, counterclaims, cross-claims, and third party claims; the type of claims which are clearly within the purview of subsection (2) of the statute: "a debtor may not maintain an action... ." Compare Carlson v. Estes, 458 N.W.2d 123 (Minn.App. 1990) (statute required dismissal of one count of third party complaint alleging breach of oral agreement to lower interest rate on balance of loan); Becker v. First American State Bank, 420 N.W.2d 239 (Minn. Ct. App. 1988) (action against bank seeking damages from quick sale of property allegedly caused by bank's failure to extend credit must be supported by a writing); Fronning v. Blume, 429 N.W.2d 310 (Minn. Ct. App. 1988) (borrower commenced action to enforce significant oral alteration of original agreement; action *343 within statute). Brenowitz argues that the intent of the legislature in enacting this statute, i.e., lender protection from suits brought by disaffected debtors, can be reconciled with the preservation of equitable principles of defense embodied in the concepts of waiver, estoppel, and bad faith by holding that his affirmative defenses remain outside the operation of the statute. We find the construction of the statute put forth by Brenowitz the better-reasoned approach.
The Florida statute, like the Minnesota statute, works to prevent a debtor seeking affirmative relief from using an unwritten credit agreement to sue the creditor for breach of that agreement. Brenowitz has not made any independent claim that can be construed to be in the nature of an action for damages for breach of an unwritten agreement. On the contrary, the thrust of Brenowitz's affirmative defenses is to estop the Bank from taking advantage of the original terms of the written loan agreement in the face of a later waiver or modification of these terms. The Bank's alleged representations that form the basis for Brenowitz's equitable waiver, estoppel, and bad faith affirmative defenses are activities anticipated by the statute, i.e., "forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements." Since the agreement alleged by Brenowitz to have been reached between him and the Bank is properly classified under section (3) of the statute, it could not form the basis of a claim for affirmative relief in an action maintained by Brenowitz, unless, in the words of the statute, "the agreement satisfies the requirements of subsection (2)," i.e., unless the agreement is in writing. Since Brenowitz is not "maintaining an action" we conclude that the pleadings and affidavits show that, as a matter of law, Brenowitz's affirmative defenses of subsequent waiver, estoppel, and bad faith are outside the operation of the statute. Thus, the agreement need not have been reduced to writing in order for Brenowitz to assert it defensively.[5]
We reverse the summary judgment and remand for further proceedings.
PATTERSON and ALTENBERND, JJ., concur.
NOTES
[1] Larry Brenowitz is the maker of the promissory note; his wife, Tonya, is the personal guarantor of the note; and H.L. International, Inc., is the legal title holder of some pledged collateral. All appellants will be referred to as "Brenowitz."
[2] Hickey, Credit Agreements Required in Writing: The New Statute of Frauds, Fla.B.J. at 69 (June 1990).
[3] Minn. Stat., § 513.33 (1986).
[4] Hickey, at 69.
[5] Cf. Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973) (personal guarantor affirmatively defended on basis of estoppel; affirmative defenses based on plaintiff/lender's failure to enforce terms of separate loan agreement with third party borrower; guarantor claimed that it and lender had agreed before entering into guaranty contract that the pledged security under the separate loan agreement would be lender's primary source of collateral, but terms of the third party loan agreement were not in or referred to by the guaranty agreement; trial court judgment in favor of guarantor affirmed).