UNIVEX INTERNATIONAL, INC. and CPC, Inc. n/k/a Data Packaging Corporation, Plaintiffs–Appellants,

v.

ORIX CREDIT ALLIANCE, INC., Defendant–Appellee.

No. 93CA1787.

Colorado Court of Appeals, Div. V.

Feb. 23, 1995.

Rehearing Denied March 30, 1995.

Certiorari Granted Sept. 25, 1995.

Quiat Schlueter Mahoney Ross & Barber, P.C., Laurin D. Quiat, Denver, for plaintiffs-appellants.

· Parcel Mauro Hultin & Spaanstra, P.C., Edward W. Stern, Laurie L. Korneffel, Denver, for defendant-appellee.

Opinion by Judge DAVIDSON.

In this action for breach of a sales agreement, plaintiffs, Univex International, Inc., and CPC, Inc., n/k/a Data Packaging Corporation, appeal from the summary judgment entered in favor of defendant, Orix Credit Alliance, Inc. (Orix). We affirm.

In 1989, Communications Packaging Corporation, Media Packaging, Inc., Mary E. Rose, and Robert D. Rose (debtors) gave Orix a security interest in certain items of equipment as collateral for a loan. In January 1991, debtors defaulted on the loan.

Plaintiffs, debtors, and Orix then commenced negotiations towards a voluntary foreclosure which would be followed by a purchase of the equipment by plaintiffs. In the course of the negotiations, certain necessary documents, including a bill of sale, a promissory note, and a security agreement, were drafted and sent as a package to plaintiffs' attorney. None of these documents was ever signed.

On March 4, 1991, plaintiffs' attorney sent Orix a note outlining plaintiffs' proposed changes to the document package. At or near the same time, debtors informed Orix that they were not going to agree to a volun-

tary foreclosure, and shortly thereafter, debtors procured a buyer who purchased Orix's security interest for the amount outstanding on the loan.

Plaintiffs then initiated this action against debtors and Orix. Debtors were dismissed from the action by stipulation and Orix moved for summary judgment on plaintiffs' claims against it for breach of contract and promissory estoppel.

The trial court granted the motion on the grounds that the lack of a signed contract precluded both claims pursuant to the Colorado Uniform Commercial Code version of the statute of frauds, § 4–2–201, C.R.S. (1992 Repl.Vol. 2), made applicable to a sale of secured goods by § 4–9–504(1), C.R.S. (1992 Repl.Vol. 2).

Plaintiffs appeal, contending that this was a sale of goods between merchants which required only a confirming memorandum under the Colorado Uniform Commercial Code. Alternatively, they argue that the trial court erred in determining that, because of § 4–2–201, plaintiffs' reliance upon an oral promise for the sale of the equipment was unreasonable as a matter of law.

## I.

Orix contends, as it did in the trial court, that § 38–10–124, C.R.S. (1994 Cum.Supp.) requires all credit agreements to be in writing and precludes finding implied credit agreements under any circumstances, including those which would otherwise support promissory estoppel. Plaintiffs argue that this contention was not properly raised and should not be considered on appeal. We disagree that this contention is not properly before us. Furthermore, because we find that § 38–10–124 is dispositive, we affirm the trial court's judgment.

## A.

■ The assertion that a claim is barred by the statute of frauds is an affirmative defense. See C.R.C.P. 8(c); *Kiely v. St. Germain*, 670 P.2d 764 (Colo.1983). As such, it must ordinarily be raised by answer. See *Markoff v. Barenberg*, 149 Colo. 311, 368 P.2d 964 (1962). Moreover, if the statute of

frauds is neither pleaded nor raised during the trial court proceedings, it will be deemed waived and will not be considered for the first time on appeal. *Saccomano v. Palermo*, 159 Colo. 307, 411 P.2d 22 (1966).

Section 38–10–124 is a statute of frauds. Not only is it contained in the statutory article designated as such, but also it fulfills the traditional purpose of a statute of frauds by requiring a written agreement signed by the party against whom enforcement is sought.

■ Here, contrary to plaintiffs' assertions, Orix pled the statute of frauds affirmatively as a defense in its answer and listed the statute of frauds as a defense in its disclosure certificate. It is not necessary to identify a particular statute of frauds by section number to satisfy the requirements of C.R.C.P. 8(c). The statute of frauds is not contained in merely one statutory section, but in many. See § 38–10–101, et seq., C.R.S. (1982 Repl.Vol. 16A); §§ 4–1–206 and 4–2–201, C.R.S. (1992 Repl.Vol. 2). *Cf. Butler v. Behaeghe*, 37 Colo.App. 282, 548 P.2d 934 (1976).

■ Also, contrary to plaintiffs' contention, the parties had sufficient opportunity to argue the issue to the trial court. Although the trial court did not rely upon § 38–10–124 in its order, Orix had brought the statute to the court's attention in the form of supplemental authority in support of its motion for summary judgment, and plaintiffs briefed and argued the issue in their motion for reconsideration. Thus, the issue is properly before us on appeal. See *Patterson v. Cronin*, 650 P.2d 531 (Colo.1982).

## B.

According to § 38–10–124(2), C.R.S. (1994 Cum.Supp.):

Notwithstanding any statutory or case law to the contrary, including but not limited to section 38–10–112, no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agree-

ment is in writing and is signed by the party against whom enforcement is sought.

"Credit agreement" is defined by § 38–10–124(1)(a), C.R.S. (1994 Cum.Supp.) as:

(I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;

(II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and

(III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

Under this broad definition, the alleged contract here is a credit agreement. It provides for financing by Orix in excess of $25,000. Orix is a financial institution and, therefore, a "creditor" as defined by § 38–10–124(1)(b), C.R.S. (1994 Cum.Supp.).

### 1.

Plaintiffs argue that, notwithstanding the broad definition of credit agreement, § 38–10–124 is not applicable because they only seek to enforce that portion of the alleged agreement which relates to the sale of the equipment and do not seek to enforce that portion of the agreement that provides for financing. We are not persuaded.

Section 38–10–124 applies to any agreement to extend credit, regardless of the context in which the agreement was formed, and bars any action or claim relating to a credit agreement, regardless of whether the action is based upon a breach of contract or on some other theory of recovery. *See Norwest Bank Lakewood v. GCC Partnership,* 886 P.2d 299 (Colo.App.1994); *Pima Financial Service Corp. v. Selby,* 820 P.2d 1124 (Colo.App.1991). Therefore, plaintiffs may not transform this somewhat complex financial transaction into a simple cash purchase by selecting certain portions that they wish

to enforce and disregarding the remainder of the agreement.

### 2.

Plaintiffs also argue that a material issue of fact remains as to whether, taking several documents together, Orix had sufficiently "subscribed" the agreement so as to fulfill the signing requirement pursuant to judicial interpretation of the statute of frauds. Again, we disagree.

Plaintiffs rely upon authority interpreting the statute of frauds as codified at § 38–10–112, C.R.S. (1982 Repl.Vol. 16). Section 38–10–124 specifically provides, that in the case of a credit agreement, it, and not § 38–10–112, controls.

Section 38–10–124(2) requires a signature. No signature by Orix was ever obtained on any of the documents which comprise the agreement plaintiffs seek to enforce.

### II.

Ordinarily, the lack of an enforceable contract and the concomitant assertion of a statute of frauds defense will not preclude a promissory estoppel claim. Section 4–1–103, C.R.S. (1992 Repl.Vol. 2); *see Chidester v. Eastern Gas & Fuel Associates,* 859 P.2d 222 (Colo.App.1992); *cf. Karakehian v. Boyer,* 900 P.2d 1273 (Colo.App.1994) (statute of frauds is not a defense to a promissory estoppel claim).

In the case of a credit agreement, however, § 38–10–124(3), C.R.S. (1994 Cum. Supp.) provides that:

A credit agreement may not be implied under any circumstances, including, without limitation, from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel.

Section § 38–10–124(3) specifically precludes assertion of a promissory estoppel claim to enforce an unsigned credit agreement despite case law relating to other types of oral agreements or promises. *See* § 38–10–124(2). Therefore, plaintiffs' claim for

promissory estoppel is barred as a matter of law.

### III.

 A correct result will be upheld on review, even if the reason for the trial court's ruling was wrong. *Norwest Bank Lakewood v. GCC Partnership, supra; Cole v. Hotz,* 758 P.2d 679 (Colo.App.1987). Because plaintiffs' claims are precluded by § 38–10–124, we affirm the judgment without considering plaintiffs' other contentions.

The judgment is affirmed.

ROTHENBERG and KAPELKE, JJ., concur.