UNIVEX INTERNATIONAL, INC.; and
CPC, Inc., n/k/a Data Packaging
Corporation, Petitioners,

v.

ORIX CREDIT ALLIANCE,
INC., Respondent.

No. 95SC284.

Supreme Court of Colorado,
En Banc.

April 22, 1996.

Quiat, Schlueter, Mahoney & Ross, P.C., Laurin D. Quiat, Denver, for Petitioners.

Parcel, Mauro, Hultin & Spaanstra, P.C., Edward W. Stern, Laurie L. Korneffel, Denver, for Respondent.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Univex International, Inc. v. Orix Credit Alliance, Inc.*, 902 P.2d 877 (Colo.App.1995). The court of appeals held that the statute of frauds applicable to credit agreements, section 38–10–124(1)(a), 16A C.R.S. (1994 Supp.), precludes enforcement of an oral agreement to sell collateral which accompanies an oral purchase money credit agreement. We affirm.

## I.

The petitioners, Univex International, Inc. and CPC, Inc., n/k/a Data Packaging Corporation (hereinafter referred to collectively as "Univex"), are manufacturers of packaging products. In January of 1991, representatives of Robert Rose, d/b/a Communications Packaging Corporation and Media Packaging, Inc. (hereinafter referred to collectively as "Rose"), a company in competition with Univex, contacted Univex. Rose explained to Univex that Rose was experiencing severe financial problems which included being in default on equipment loans with Orix Credit Alliance, Inc. ("Orix") and First Interstate Bank.[1] Rose suggested to Univex that Univex purchase the machinery which secured the Orix loan and the First Interstate Bank loan.[2] Univex subsequently met with Orix to discuss the purchase of the machinery securing Orix's loan.

On January 23, 1991, Univex and Orix negotiated for a transaction whereby Orix would acquire the machinery from Rose by voluntary repossession, and Univex would acquire the machinery from Orix for $221,-647.03. Because Univex desired to finance through Orix the purchase of the machinery, Univex delivered to Orix financial statements and a check in the amount of $25,000.00 to serve as a deposit for the transaction. Subsequently, Univex and Orix representatives exchanged drafts of a security agreement, promissory note, and bill of sale.

However, during the first week of March 1991, before the sales documents were executed by Orix and Univex, Rose told Orix that it would not execute a voluntary foreclosure agreement. Instead, Rose procured a buyer who purchased Orix's security interest for the amount outstanding on the loan. Approximately two weeks later, Univex received the return of its $25,000.00 security deposit from Orix. At no time during this process did Univex and Orix reach a written agreement as to Univex's proposal for a financed purchase of the machinery.

In July of 1991, Univex filed suit against Orix and Rose in the Arapahoe County District Court, claiming breach of contract, promissory estoppel, fraud, conspiracy, conversion, trade defamation, accounting, interference with foreclosure, and interference with prospective business relations. Prior to trial, Rose filed for bankruptcy protection. Univex's claims against Rose were ultimately settled and Rose was dismissed from the case. Univex's claims against Orix for breach of contract and promissory estoppel proceeded toward trial. Prior to trial, Orix filed a motion for summary judgment as to both of Univex's claims, asserting that the oral sales agreement was void pursuant to the statute of frauds provision set forth in the Uniform Commercial Code (UCC). § 4–2–201, 2 C.R.S. (1992).

On July 28, 1993, the trial court entered its order granting summary judgment against Univex as to the claims of promissory estoppel and breach of contract. The trial court held that (1) the transaction between Univex and Orix was governed by Article 9 (Secured Transactions) and Article 2 (Sale of Goods) of the UCC; (2) Univex's breach of contract claim was barred by section 4–2–201 of the UCC; and (3) Univex's promissory estoppel

---

1. Orix and First Interstate Bank had separate security interests in different items of Rose's equipment.

2. The facts related to the First Interstate Bank loan will not be discussed here as that loan is not pertinent to the case before us.

claim must be dismissed because it was per se unreasonable for Univex to rely upon an unwritten agreement. On August 8, 1993, Univex filed a motion for reconsideration, on which the trial court did not rule. The motion was therefore deemed denied on October 8, 1993, pursuant to C.R.C.P. 59(j).

On appeal, the court of appeals affirmed the trial court order for summary judgment, but on grounds different from that on which the trial court relied. Instead, the court of appeals based its decision solely on its finding that any sales agreement between Univex and Orix was a credit agreement as defined by section 38–10–124(1)(a), 16A C.R.S. (1994 Supp.), and must therefore be in writing and signed by Orix. The court of appeals did not address the applicability of section 4–2–201 of the UCC statute of frauds to this case.

## II.

Univex contends that section 4–2–201, with its lenient statute of frauds provisions, applies to the negotiations between Univex and Orix. Univex also argues that section 38–10–124, 16A C.R.S. (1994 Supp.), does not preclude enforcement of an oral agreement to sell assets which is accompanied by an oral purchase money credit agreement. We reject both these contentions and affirm the court of appeals.

### A.

■ The court of appeals relied solely on section 38–10–124 in concluding that Univex was barred from enforcing the oral credit agreement between Univex and Orix. The court of appeals did not address the question of whether section 4–2–201, the statute of frauds applicable to sales generally, applies to the negotiations between Univex and Orix. Univex now argues that the court of appeals erroneously relied on section 38–10–124 in its holding because section 4–2–201 governs this case.

The UCC statute of frauds applicable to sales provides that if the parties are merchants, a confirmatory memorandum will satisfy the requirement of a writing unless the receiving party timely objects. § 4–2–201(1),(2), 2 C.R.S. (1992). Furthermore, the UCC statute of frauds allows enforcement of oral agreements where promissory estoppel is asserted. § 4–1–103, 2 C.R.S. (1992). Thus, the UCC statute of frauds applicable to sales provides Univex the potential ability to enforce its negotiations with Orix.

■ In Colorado, Article 2 of the UCC has been applied to only a limited number of cases, all of which have involved simple sales of goods not including credit transactions. See, e.g., Colorado–Kansas Grain Co. v. Reifschneider, 817 P.2d 637 (Colo.App.1991) (sale of corn with no additional credit transactions); Lockhart v. Elm, 736 P.2d 429 (Colo.App.1987) (sale of apparel with no credit transactions); Colorado Carpet Installation, Inc. v. Palermo, 668 P.2d 1384 (Colo. 1983) (sale and installation of carpet). Additionally, under Colorado law, a contract cannot be severed unless the language of the contract manifests each party's intent to treat the contract as divisible. Homier v. Faricy Truck & Equip. Co., 784 P.2d 798, 801 (Colo.App.1988); accord Prospero Associates v. Burroughs Corp., 714 F.2d 1022 (10th Cir.1983) (holding that a bill of sale cannot be severed from an agreement where the language of the contract did not manifest an intent by the parties to form a severable contract). Accordingly, the transaction between Univex and Orix was not a simple sale of goods because it involved Univex financing the purchase of goods through Orix, a creditor. Also, contrary to Univex's assertion, the negotiations between Univex and Orix cannot be severed into two separate parts so that Univex may enforce the transaction as a simple sales agreement.

Because the transaction between Univex and Orix was not a simple sale of goods, we reject Univex's argument that section 4–2–201 is applicable to the transaction. We now turn to the question of whether the court of appeals properly determined that section 38–10–124 bars Univex from enforcing its oral agreement with Orix.

### B.

■ The court of appeals held that section 38–10–124, the statute of frauds applicable to

credit agreements, applies in this case and thus bars Univex's claim to enforce the oral credit agreement between Univex and Orix. We agree.

■■■ In construing statutory provisions, we should give effect to the intent of the legislature. *PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 545 (Colo.1995). We must look first to the statutory language itself, giving words and phrases their commonly accepted meaning. *Id.* Where the language of a statute is plain and the meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written. *Id.*

■■■ The legislature enacted the statute of frauds applicable to credit agreements in an effort to discourage lender liability litigation and to promote certainty in credit agreements. *Norwest Bank Lakewood Nat'l Ass'n v. GCC Partnership,* 886 P.2d 299, 301 (Colo. App.1994). The statute defines a credit agreement as:

A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation.

§ 38–10–124(1)(a)(I), 16A C.R.S. (1994 Supp.). This statutory definition of a credit agreement is broadly applied to credit agreements that also serve as an instrument for the sale of assets. *See, e.g., Pima Fin. Serv. Corp. v. Selby,* 820 P.2d 1124 (Colo.App. 1991). Moreover, section 38–10–124(2), 16A C.R.S. (1994 Supp.), bars any "action or claim *relating* to a credit agreement" which involves a principal amount of more than $25,-000.00 unless it is in writing and signed by the party against whom enforcement is sought.[3] (Emphasis added.) As the plain

language of the statute indicates, section 38–10–124 does not apply only to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements involving a principal amount exceeding $25,000.00. Unlike section 4–2–201, section 38–10–124(3), 16A C.R.S. (1994 Supp.), specifically provides that credit agreements may not be implied under any circumstances, including by promissory estoppel.

In the case before us, section 38–10–124 applies rather than section 4–2–201 because the alleged agreement at issue related to a credit agreement, as supported by the record.[4] Application of section 38–10–124 in this case promotes the legislative intent of discouraging lender liability litigation in these kinds of circumstances. Here, Orix and Univex were negotiating for financing that would enable Univex to purchase goods from Orix. The transaction between Orix and Univex was thus a credit agreement, as is broadly defined by section 38–10–124(1)(a)(I). Furthermore, Orix and Univex were negotiating for a credit agreement with a principal amount of well over $25,000.00. The transaction between Orix and Univex is therefore subject to the statute's unambiguous requirement that credit agreements be in writing and signed by the party against whom enforcement is sought. However, any agreement between Orix and Univex was merely verbal and Orix did not sign any credit agreement with Univex. Thus, in applying the plain language of section 38–10–124, we conclude that the credit agreement between Univex and Orix did not meet the statutory requirements and cannot be enforced.

---

3. The requirements of § 38–10–124 only apply to creditors who are financial institutions. § 38–10–124(1)(b), 16A C.R.S. (1994 Supp). Orix is a financial institution and thus is subject to this statute.

4. It is undisputed in the record that the alleged oral agreement between Univex and Orix included a credit agreement. Univex, in its complaint, admits that the oral agreement between the parties included financing of the proposed sale. Plaintiff's Complaint ¶ 20.

Additionally, the trial court stated that its order granting Orix's motion for summary judgment was based on its "review of all the briefs and exhibits" in this case. Tr. Ct. Order, July 28, 1993. The exhibits in this case include a draft of a promissory note which delineates financing terms for a credit agreement, as well as several other documents exchanged by the parties which evidence that the parties contemplated a credit agreement.

## III.

For the foregoing reasons, we hold that section 38–10–124 applies to the alleged agreement between Univex and Orix, thereby precluding Univex from enforcing the parties' oral agreement to sell collateral accompanied by an oral purchase money credit agreement. We therefore affirm the court of appeals and find that the trial court's summary judgment against Univex was proper.

KIRSHBAUM, J., dissents, and LOHR, J., joins in the dissent.

### Justice KIRSHBAUM dissenting:

The majority concludes that the court of appeals properly determined that the statute of frauds applicable to credit agreements contained in section 38–10–124(2), 16A C.R.S. (1995 Supp.), bars the claims of plaintiffs-petitioners Univex International, Inc. and CPC, Inc., now known as Data Packaging Corporation (hereafter referred to collectively as "Univex") against defendant-respondent Orix Credit Alliance, Inc. (Orix) for breach of contract and promissory estoppel arising out of an alleged oral agreement for the sale of certain equipment to Univex by Orix. The majority also determines that the statute of frauds contained in the Uniform Commercial Code, section 4–2–201, 2 C.R.S. (1992) (UCC statute of frauds), is inapplicable to the facts of this case because the oral agreement for sale of goods in this case contains provisions related to financing and therefore is a "credit agreement" as defined by section 38–10–124(1)(a)(I), 16A C.R.S. (1995 Supp.). I do not agree with this all-inclusive definition of the term "credit agreement" for purposes of the general statute of frauds provisions of section 38–10–124(1)(a)(I), and conclude that in the absence of any findings by the trial court concerning the terms of the oral agreement in question, we cannot properly resolve the issues presented here. I therefore respectfully dissent to the majority opinion.

### I

Univex is a manufacturer of packaging products. In January 1991, representatives of Univex were contacted by Robert Rose (Rose), the owner of competing packaging manufacturing corporations that were in default on loans made to them by Orix. In order to satisfy his debt to Orix, Rose approached Univex with an offer to sell the manufacturing equipment which secured Orix's loans. Rose represented that he would sell the equipment to Univex through a "voluntary foreclosure." Univex representatives met with Orix officials and Rose to discuss the purchase of the equipment, and throughout the month of January Univex and Orix prepared documents containing proposed terms of the sale. Those documents were never signed. Nevertheless, the trial court found that in March of 1991 Orix representatives told Univex representatives that "they had a deal" and Univex gave Orix a check for $25,000 as a deposit for the purchase of the equipment.

Prior to the execution of any of the prepared documents, Rose determined that he would not pursue voluntary foreclosure and located a different buyer, Rampage Leasing Company (Rampage). Orix subsequently sold the equipment to Rampage. Orix later returned Univex's $25,000 deposit.

Univex subsequently filed this action against Orix[1] alleging, *inter alia*, breach of contract and promissory estoppel. On May 3, 1993, Orix filed a motion for summary judgment asserting that there was no genuine issue of material fact as to whether a contract had been created. On July 13, 1993, Orix moved for a bench trial, arguing that the UCC statute of frauds barred Univex's breach of contract claim and that the promissory estoppel claim could be tried by the court. On July 23, 1993, five days prior to the trial court's order, Orix filed a document supplementing its motion for summary judgment wherein Orix argued that Univex's claims were barred by the statute of frauds applicable to credit agreements contained in section 38–10–124(2), 16A C.R.S. (1995 Supp.).

---

1. The complaint also named Rose as a defendant; however, Univex's claims against Rose were dismissed by stipulation.

On July 28, 1993, the trial court entered an order granting summary judgment in favor of Orix. The trial court stated that "there may be a dispute as to whether an oral agreement was reached," but that "there appears to be no dispute that no written agreement was reached." Other than a finding that Orix representatives told Univex officials "they had a deal," the trial court made no findings with respect to the terms or provisions of the alleged oral agreement. The trial court assumed for purposes of its decision that an "oral agreement" had been reached between the parties and determined that such agreement was barred by the UCC statute of frauds.[2] The trial court also determined that none of the exceptions to the UCC statute of frauds applied and that "there [was] no factual dispute concerning them." There is no reference to section 38–10–124(2) in the trial court's order. The trial court also dismissed Univex's claim of promissory estoppel on the ground that "[s]ince the statute of frauds provides that no agreement is enforceable unless in writing, it would not be reasonable for [Univex] to rely on an unenforceable oral agreement." Orix filed a motion to amend the order and judgment, requesting the trial court to amend its order to include reference to section 38–10–124. Univex filed a motion for reconsideration and objection to Orix's motion to amend the order and judgment. These post-trial motions were never ruled upon by the trial court and were therefore deemed to have been denied pursuant to C.R.C.P. 59(j). Univex appealed, and the court of appeals affirmed the judgment of the trial court. *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 902 P.2d 877 (Colo.App.1995). The court of appeals, however, did not consider the applicability of the UCC statute of frauds. Instead, that court determined that the alleged oral agreement between Univex and Orix was a "credit agreement" as defined by section 38–10–124(1)(a)(I) and was therefore invalid pursuant to the terms of section 38–10–124(2) because it was not in writing. *Id.* at 880.

---

**2.** In the absence of any oral or written agreement, consideration of Orix's statute of frauds

## II

Before the court of appeals, Univex argued that it had entered into an oral agreement for the sale of goods with Orix and that the oral agreement was not barred by the UCC statute of frauds because the agreement was governed by the "confirmatory memorandum" exception to that statute. *Id.* at 879. Univex also argued that the trial court erroneously dismissed its promissory estoppel claim. Orix argued that the alleged agreement was a "credit agreement" and that Univex's claims were therefore barred pursuant to section 38–10–124(2). *Id.* The court of appeals was therefore required to determine which statute of frauds was applicable to the alleged oral agreement.

The UCC statute of frauds applies to oral agreements for the sale of goods and contains the following language:

> **4–2–201. Formal requirements—statute of frauds.** (1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

§ 4–2–201(1). Section 4–2–201(2) contains the following exception to the UCC statute of frauds:

> (2) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

In contrast, the statute of frauds in section 38–10–124(2) pertains to credit agreements and contains the following language:

argument would have been unwarranted.

(2) Notwithstanding any statutory or case law to the contrary ... no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

"Credit agreement" is defined, in pertinent part, as follows:

(I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;

(II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a).....

§ 38–10–124(1)(a)(I), (II).

The majority determines, as did the court of appeals, that the alleged oral agreement was a "credit agreement" as defined by section 38–10–124(1)(a)(I), because "Orix and Univex were negotiating for financing...." Maj. op. at 1358. However, a reviewing court must consider the terms and provisions of an oral agreement before determining whether it is a "credit agreement" or an agreement for the sale of goods. Univex submitted several documents relating to financing arrangements in opposition to Orix's summary judgment motion. However, while the trial court assumed for purposes of its decision that an "oral agreement" existed, the trial court's order contains no findings with respect to the terms and provisions of that

agreement. In the absence of specific findings, the effect of the rule announced by the majority is to render any commercial transaction allegedly containing "financing" terms a "credit agreement" in its entirety regardless of the nature or extent to which the agreement addresses "financing" issues or how incidental such issues might be to the primary transaction. I find no support in the statute for the conclusion that every purchase and sale agreement that also refers to financing arrangements for such transaction is a credit agreement.

Section 38–10–124 was enacted by the General Assembly in an effort to discourage lender liability actions and "to promote certainty into credit agreements involving a principle amount of more than $25,000 in which the creditor is a financial institution." *Norwest Bank Lakewood, N.A. v. GCC Partnership,* 886 P.2d 299, 301 (Colo.App.1994). The statute bars any claim *"relating* to a credit agreement and expressly precludes exceptions by implication or construction." *Id.* at 302 (emphasis in original).[3] Here, Univex's claim is a breach of contract claim relating to an agreement for the sale of goods. Univex does not allege breach of a financing agreement.[4]

While the term "credit agreement" has been broadly defined, cases construing the scope of the term "credit agreement" have typically involved agreements pertaining solely to loans or other financial accommodations. *See, e.g., First Nat'l Bank in Staunton v. McBride Chevrolet,* 267 Ill.App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138 (1994); *Whitney Nat'l Bank v. Rockwell,* 661 So.2d 1325 (La.1995); *Rural Am. Bank v. Herick-*

---

**3.** The majority states that the plain language of the statute "does not apply only to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements...." Maj. op. at 1358. The statute bars "any action or claim relating to a credit agreement." § 38–10–124(2). This provision has been applied in Colorado to bar claims other than breach of contract claims which "relate" to circumstances surrounding a credit agreement. *E.g., Norwest Bank,* 886 P.2d at 302 (barring tort claim based on an alleged oral promise to modify terms of promissory note). Univex's claim is for breach of a sales agreement.

**4.** Cases concerning statutes of frauds pertaining to credit agreements have generally involved a borrower seeking to enforce an oral promise to provide financing or other financial accommodations and have not involved the sale of goods by the lender. *See, e.g., Norwest Bank Lakewood, N.A. v. GCC Partnership,* 886 P.2d 299 (Colo.App. 1994); *Brenowitz v. Central Nat'l Bank,* 597 So.2d 340 (Fla.Dist.Ct.App.1992); *McAloon v. Northwest Bancorp, Inc.,* 274 Ill.App.3d 758, 211 Ill.Dec. 281, 654 N.E.2d 1091 (1995); *American Realty Trust, Inc. v. First Bank of Mo.,* 902 S.W.2d 884 (Mo.Ct.App.1995); *Brown v. Founders Bank & Trust Co.,* 890 P.2d 855 (Okla.1994).

hoff, 485 N.W.2d 702 (Minn.1992); *Becker v. First Am. State Bank,* 420 N.W.2d 239 (Minn.Ct.App.1988). Where a single agreement arguably encompasses both a purchase and sale transaction and a financing arrangement, courts must evaluate the terms and conditions of that agreement and consider, for example, the property to be acquired, the amount financed, the duration of the financing arrangement, and whether any security has been required before concluding that the agreement is a credit agreement. Here, the trial court made no findings regarding the terms and provisions of the parties' oral agreement. Thus, this court has insufficient information upon which to base a determination that the alleged agreement between Univex and Orix was a "credit agreement" as defined in section 38–10–124(1)(a)(I).[5]

The case of *Pima Financial Service Corp. v. Selby,* 820 P.2d 1124 (Colo.App.1991), does not support the majority's proposition that the "statutory definition of a credit agreement is broadly applied to credit agreements that also serve as an instrument for the sale of assets." Maj. op. at 1358. In *Pima,* after having foreclosed upon certain property securing payment of a promissory note, the plaintiff financial institution brought an action against the defendant, the guarantor of the promissory note, seeking a deficiency judgment. *Pima,* 820 P.2d at 1125. The parties agreed that the original transaction undertaken by the plaintiff financial institution, the defendant as guarantor, and the maker of the promissory note was a "credit agreement." *Id.* at 1127. The defendant counterclaimed, alleging various lender liability claims against the plaintiff. The parties entered into settlement negotiations and a proposed written settlement agreement was

reached pursuant to which the plaintiff would purchase certain real property in which the defendant had an interest, and the plaintiff's claims as well as the counterclaims would be dismissed with prejudice. *Id.* The plaintiff subsequently objected to the terms of the settlement agreement and refused to execute it. *Id.* The defendant then moved to enforce the settlement agreement, and the trial court determined that even if a settlement agreement was reached, it could not be enforced because it constituted a "credit agreement" pursuant to section 38–10–124 and therefore was required to be reduced to writing. *Id.* The court of appeals affirmed, determining that the oral settlement agreement was an "amendment, cancellation, waiver or substituted agreement" to the original credit agreement between the plaintiff, the maker of the promissory note, and the defendant as guarantor of the promissory note. *Id.* The settlement agreement was therefore a "credit agreement" pursuant to section 38–10–124(1)(a)(II), and was required to be in writing. *Id.*

Although the plaintiff in *Pima* would have purchased property from the defendant under the credit agreement, the terms of that sale were not pertinent to the court of appeals' decision. Thus, *Pima* stands for the proposition that a settlement agreement which purports to amend, cancel, waive, or substitute for a credit agreement is in itself a credit agreement subject to the requirements of section 38–10–124. *Pima* does not stand for the proposition that any agreement for the sale of goods containing financing provisions is a "credit agreement."[6]

The effect of the majority's overly broad definition of "credit agreement" is exacerbat-

---

**5.** The majority states that "[i]t is undisputed in the record that the alleged oral agreement between Univex and Orix included a credit agreement." Maj. op. at 1358 n. 4. To the contrary the record, including the summary judgment motions and supporting documents and briefs, reveals that the parties dispute not only the contents of any oral agreement but whether in fact any oral agreement was actually reached.

**6.** On the present record, the agreement appears to be primarily a purchase and sale agreement which would be governed by the UCC statute of frauds. Because the alleged agreement was oral,

Univex asserts that the circumstances of this case fall within the confirmatory memorandum exception for merchants contained in § 4–2–201(2). The trial court stated that there was "no issue of fact" with regard to any of the exceptions to the statute of frauds; however, Univex and Orix continue to dispute the adequacy of the documents, whether Orix is a "merchant," and whether Univex's promissory estoppel claim is viable. The official comment to § 2–104 provides that with respect to § 2–102(2), regarding the confirmatory memorandum exception to the statute of frauds, banks may be merchants.

ed by its conclusion that the alleged oral agreement is not severable. Maj. op. at 1357. For this proposition, the majority relies on *Homier v. Faricy Truck & Equipment Co.*, 784 P.2d 798 (Colo.App.1988). In *Homier*, the court determined that a contract for the sale of a truck could not be divided because the entire truck—consisting of the cab and a chassis with a 15–foot dump body—constituted a single "commercial unit." *Homier*, 784 P.2d at 801. The principles articulated in *Homier* regarding divisibility of a contract into commercial units do not control the circumstances of this case. Univex seeks to enforce an oral contract with Orix for the sale of all of Rose's equipment. Univex does not seek to sever a "commercial unit," but rather asserts that the separate financing agreement is severable from the sales agreement.

Because the trial court made no findings with respect to the terms and provisions of the "final" agreement, the extent to which financing provisions and provisions for the sale of equipment are intertwined is unclear. Even if the financing terms allegedly agreed upon by Univex and Orix constitute a "credit agreement" barred by the statute of frauds contained in section 38–10–124(2), the alleged "credit agreement" may well be severed from the alleged contract regarding the sale of Rose's equipment. In *Apostolos v. R.D.T. Brokerage Corp.*, 159 A.D.2d 62, 559 N.Y.S.2d 295 (1990), the court determined that while as a general rule if part of a contract is void under a statute of frauds the entire contract is void, a "severable portion" of such a contract may be enforced "where . . . apportionment of the agreement may be accomplished without doing violence to its terms or making a new contract for the parties." *Apostolos*, 559 N.Y.S.2d at 298. An oral agreement is "severable" where it is "susceptible of division and apportionment, having two or more parts not necessarily dependent upon each other." *Id.; see Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 801 (9th Cir.1991) (promise barred by statute of frauds may be excised where that promise is ancillary to contract as a whole). Univex seeks to enforce an oral agreement pursuant to which Univex would purchase equipment from Orix for $221,647.03. Provided that the claims regarding the sales agreement are not otherwise barred, the alleged agreement to sell equipment may well be enforceable regardless of the viability of the financing arrangement.

In the absence of specific findings regarding the terms of the oral contract, resolution of the issues here raised is not possible. For these reasons, I would reverse the decision of the court of appeals and remand the case to that court with directions to remand the case to the trial court for a determination of the specific terms of the oral agreement and such other determinations as may be appropriate.

### III

For the foregoing reasons, I respectfully dissent to the majority opinion.

LOHR, J., joins in this dissent.